CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2018 JAN -9  AM 9: 12

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| LIFE IN CHRIST FELLOWSHIP OF ABILENE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 1:17-CV-0117-BL |
| ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, et al., | § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

The Court has under consideration Plaintiff's Motion to Remand (doc. 4) filed on September 22, 2017. Defendant Allied Property and Casualty Insurance Company ("Allied") has filed a response (doc. 6) to which Plaintiff has not replied. This action has been referred pursuant to 28 U.S.C. § 636(b). Because the parties have not consented to have all further proceedings in this case conducted by a magistrate judge, the undersigned issues this report and recommendation; directs the Clerk of Court to reassign this case to Senior District Judge Sam R. Cummings; and recommends that the Court find that Allied has not carried its burden to show that Plaintiff improperly joined James Edwards III ("Edwards") as a defendant, grant the motion to remand, and remand this case to the 42nd District Court of Taylor County, Texas.

## I.    BACKGROUND[1]

Plaintiff commenced this action in state court by filing an original petition against Allied and

---

[1]For reasons that become apparent later in this recommendation, the background facts are taken from summary-judgment type evidence in the record and unchallenged factual allegations from Plaintiff's pleading as viewed in a light most favorable to Plaintiff. Some procedural background facts are taken from public court records that are subject to judicial notice.

Edwards. *See* Orig. Pet. (doc. 4-1).[2] Plaintiff alleges that it is owner of an insurance policy (Texas Commercial Property Policy No. CP CPPP 7244249418) issued by Allied that "provides coverage for damage caused by covered perils, including hail damage, wind damage, and water intrusion damage." *Id.* at 3. After Plaintiff submitted a claim for damage caused by a June 2014 storm, Allied assigned Edwards to adjust the claim. *Id.* at 4-5. Based on Edwards's inspection, estimate, and adjustment, Allied "determined that only $32,803.75 was due on Plaintiff's insurance claim" and denied coverage for a substantial part of damages to the insured property. *Id.* at 7. This denial came approximately two months after Plaintiff submitted its claim. *Id.* at 8.

Because Plaintiff disputed the findings of Allied and Edwards, it retained its own adjuster who determined that covered damage exceeds $394,000. *Id.* Although Plaintiff attempted to work with Allied and Edwards to resolve the insurance claim, they would not alter their position, but Allied did proceed with a request for appraisal that Plaintiff requested pursuant to the insurance policy. *Id.* In conducting that appraisal, Allied's appraiser – like Edwards – underestimated the scope of damages to the property. *Id.*

In March 2017, an appraisal umpire issued an appraisal award for replacement cost ($218,457.54) and for cash value ($207,207.54). *Id.* The next month, Allied provided payment for another $6,200.00 based on a portion of the appraisal award. *Id.* Allied refused to pay any more based on its prior denial of coverage and claim payments. *Id.*

Against Allied alone, Plaintiff asserts claims for (1) violations of Chapter 542 of the Texas Insurance Code, (2) breach of contract, and (3) breach of duty of good faith and fair dealing. *Id.* at

---

[2]The state petition constitutes Plaintiff's complaint, which is one of only seven civil pleadings allowed by the federal rules. *See* Fed. R. Civ. P. 7(a). This recommendation may use the terms "petition" and "complaint" interchangeably.

12-14, 17-18.  Against the defendants jointly, it asserts claims of unfair insurance practices in viola-

tion of Chapter 541 of the Texas Insurance Code and violations of the Texas Deceptive Trade

Practices-Consumer Protection Act ("DTPA").  *Id.* at 12-17.  With respect to the DTPA claims, it

asserts that defendants violated Sections 17.46(b)(2), (5), (7), (12), and (19) and Sections

17.50(a)(2)-(4).  *Id.* at 14.

Both defendants filed an answer in state court asserting a general denial of all material

allegations.  *See* Def. Allied's Orig. Answer (doc. 1-2); Def. Edwards's Orig. Answer (doc. 1-3).

On July 31, 2017, Edwards filed an amended answer in which he asserts statute of limitations as an

affirmative defense.  *See* Def. Edwards's First Am. Answer (doc. 1-4).  That same day, Allied re-

moved the action to federal court on grounds of diversity jurisdiction while contending that Plaintiff

improperly joined Edwards to avoid federal jurisdiction.  *See* Notice of Removal (doc. 1).  Within

thirty days of that filing, Plaintiff moved to remand the case to state court.  *See* Mot. Remand.  The

motion became ripe for ruling following the response by Allied and Plaintiff's failure to file a reply

brief.

## II.    MOTION TO REMAND

In general, a defendant may remove a state civil action to federal court so long as the action

falls within the original jurisdiction of the federal courts.  28 U.S.C. § 1441(a).  Federal courts have

original jurisdiction over all civil actions where there is diversity of citizenship between the parties

and the sum or value of the case is above $75,000, exclusive of interest or costs.  *See id.* § 1332(a).

However, no defendant may remove a "civil action otherwise removable solely on the basis of"

diversity jurisdiction under § 1332(a) if any properly joined and served defendant "is a citizen of the

State in which such action is brought."  *See id.* § 1441(b).

3

A party may move to remand a removed action to state court. 28 U.S.C. § 1447(c). "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)). "Any ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). The removing party "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Id.*

Plaintiff moves to remand this case for lack of diversity jurisdiction. There is no question about the jurisdictional amount in controversy and the parties agree that Plaintiff and Defendant Edwards are citizens of Texas, which would destroy diversity jurisdiction if Plaintiff properly joined him as a defendant.

## A. General Principles of Improper Joinder[3]

A defendant may establish improper joinder in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc); *accord Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016) (stating the two ways as "(1) the plaintiff *has* stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse"). Only the second of these is implicated in this case.

To succeed on a claim of improper joinder, the defendant must demonstrate "that there is no

---

[3]The Fifth Circuit uses the phrase "improper joinder" instead of "fraudulent joinder," which is often used in other jurisdictions. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 n.14 (5th Cir. 2013). This recommendation will likewise use the phrase "improper joinder."

4

possibility of recovery by the plaintiff against an in-state defendant," which means that the defendant must show that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (citations and emphasis omitted); *accord Int'l Energy*, 818 F.3d at 200 (using same phrasing but substituting "nondiverse" for "in-state"); *Smallwood*, 385 F.3d at 573 (adopting "this phrasing of the required proof and reject[ing] all others, whether the others appear to describe the same standard or not"). The Fifth Circuit has consistently reiterated that a claim of improper joinder fails when there is "a *reasonable* possibility of recovery, not merely a *theoretical* one." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009) (quoting *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)); *accord Smallwood*, 385 F.3d at 573 n.9 (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000) and agreeing that a "'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder").

The Court's task is not to determine whether the plaintiff will recover on a claim against the non-diverse defendant or whether the plaintiff is even likely to recover. *See Smallwood*, 385 F.3d at 573; *Mumfrey*, 719 F.3d at 401. If the Court finds even one asserted claim that the plaintiff can "potentially sustain" against the non-diverse defendant, "remand of the entire case is necessary." *Smith-Manning v. State Farm Lloyds*, No. 3:13-CV-3056-M, 2013 WL 5637539, at *4 (N.D. Tex. Oct. 14, 2013); *accord Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

In the context of improper joinder and as part of the burden to show the existence of federal jurisdiction and the propriety of removal, the party seeking removal must establish that the plaintiff "has failed to state a claim against [the nondiverse defendant]." *Int'l Energy*, 818 F.3d at 199. "The

5

burden of persuasion on those who claim [improper] joinder is a heavy one." *Travis v. Irby*, 326

F.3d 644, 649 (5th Cir. 2003).  When determining "the validity of an improper joinder claim," the

courts "evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all

contested issues of substantive fact" and "all ambiguities in the controlling state law in the plaintiff's

favor." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).  Despite this heavy burden,

a reasonable possibility of recovery is more than a "mere hypothetical possibility that such an action

could exist." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999).[4]  The Court's "inquiry

must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573.  The

plaintiff does not need to prove any claim at this stage of the litigation. *Johnson v. Zurich Am. Ins.*

*Co.*, No. 3:11-CV-0344-P, 2011 WL 3111919, at *4 (N.D. Tex. June 29, 2011).

An asserted defense may be pertinent to whether a defendant has been improperly joined and

whether a case should be remanded to state court. *See Rainwater v. Lamar Life Ins. Co.*, 391 F.3d

636, 638 (5th Cir. 2004) (per curiam).  In *Rainwater*, the Fifth Circuit remanded a case to the district

court for further proceedings consistent with *Smallwood* and in so doing stated:

> If that court should determine that the limitations defense in question is dispositive
> of all claims against all defendants, then *Smallwood* would require remand to state
> court (where, presumably, the entire case would be dismissed).  If, however, the
> district court should determine that the time bar defense is not dispositive of every
> claim against every defendant, it should continue to deny remand and proceed with
> the proper disposition of the case.

*Id.* at 638-39.

---

[4] A "mere hypothetical possibility" is just another way of describing a theoretical possibility that *Smallwood* expressly noted as insufficient to preclude a finding of improper joinder.  Consequently, the en banc *Smallwood* decision did not change the viability of *Griggs* with respect to the quoted language.  Accordingly, the language in *Griggs* remains binding law. *See Int'l Energy*, 818 F.3d at 203 (recognizing that pre-*Smallwood* opinions remain binding to the extent *Smallwood* did nothing to displace them).

## B. Methods of Analysis

The Fifth Circuit has also addressed the "uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). It recognized two ways to resolve the issue: (1) "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant" and (2) "pierc[ing] the pleadings and conduct[ing] a summary inquiry." *Id.* In 2016, the Fifth Circuit ended confusion within the courts by reiterating that *Smallwood* dictates that the federal pleading standard applies under either method when determining whether the plaintiff has improperly joined claims against a non-diverse defendant. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 200-02 (5th Cir. 2016).

Furthermore, although "a court *may* choose to use either one of these two analyses . . . it *must* use one and only one of them, not neither or both." *Id.* at 207. The chosen method of analysis affects the scope of the inquiry; courts employing the first method "may only consider the allegations in the complaint and any attachments," whereas the second method permits the courts to consider "summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003). When the second method is inapplicable, the courts "*must* use the first" method "[a]nd overarching this truism is the realization that both tests are *federal* tests." *Int'l Energy*, 818 F.3d at 207.

Plaintiff in this case relies only on its original state petition and asks the Court to apply the Rule 12(b)(6) type analysis. Allied asks the Court to consider a submitted affidavit and to pierce the

pleadings to conduct a summary judgment like inquiry because Plaintiff has misstated or omitted discrete facts that would determine the propriety of joinder. Nevertheless, it also contends that Plaintiff's claims against Edwards fail under the Rule 12(b)(6) analysis.

There is no question that the Court may consider post-removal evidence when conducting a summary inquiry into the issue of improper joinder. *Smallwood* reaffirmed that principle while also setting out the only circumstances in which the courts may consider such evidence. *See* 385 F.3d at 573-74. As stated in *Smallwood*, courts may employ a summary inquiry procedure in "cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* at 573. It lies within the sound discretion of the court to determine which procedure to utilize in a given case. *Id.* Nevertheless, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74; *accord Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 310 (5th Cir. 2005). A prerequisite for the submission of summary judgment type evidence is a pleading that itself satisfies the Rule 12(b)(6)-type analysis. *Davidson v. Ga.-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).

By proffering post-removal evidence, Allied seeks to invoke the summary inquiry procedure recognized in *Smallwood*. It proffers the affidavit to provide additional facts to bolster its position that Edwards's involvement in this case ended in 2014 and that claims against him are barred by the statute of limitations. While Allied also challenges Plaintiff's claims under the Rule 12(b)(6) analysis and although the state petition must satisfy that rule before resort to summary judgment type evidence is warranted, the Court should be satisfied that the circumstances of this case warrant use of the summary inquiry procedure. Allied provides evidence outside the pleading to address discrete

8

factual matters omitted from Plaintiff's complaint. The omitted facts go directly to whether the claims against Edwards are untimely and whether his involvement was confined to 2014.

## C. Summary Inquiry Analysis

Under the Fifth Circuit's summary inquiry analysis, this court must determine whether there are undisputed facts in the record that would preclude [Plaintiff] from recovering against [Edwards] in state court." *Wirenix, Inc. v. Ericsson, Inc.*, No. 3:06-CV-2080-G, 2007 WL 506914, at *5 (N.D. Tex. Feb. 16, 2007). Plaintiff asserts that Edwards has violated various provisions of the DTPA and engaged in unfair insurance practices in violation of Section 541 of the Texas Insurance Code. Orig. Pet. at 14-17. Plaintiff argues that it adequately alleged these claims and timely filed them. *See* Pl.'s Mot. Remand at 1, 5-15.

Rather than explain how each asserted claim fails under state law, Allied argues that (1) Plaintiff has no plausible right to relief against Edwards because the appraisal established the amount of loss and (2) the claims are untimely. *See* Def.'s Resp. at 7-9. It otherwise relies on conclusory statements that the claims fail. *See id.* at 4 (noting that notice of removal contended that Plaintiff had no plausible right to relief based upon the factual allegations in its pleading) and 6 (stating that factual allegations in the pleading are either immaterial to Edwards, "conclusory statements that fail to support the causes of action," or show that the claims are barred by the statute of limitations).

To the extent Allied wants the Court to find that Plaintiff's claims against Edwards fail based solely on its conclusory statements that they fail, the Court should decline to do so. Such approach ignores the burden that is placed upon a party seeking removal through a claim of improper joinder. As the party seeking removal, it is Allied's burden to establish that Plaintiff has failed to state a claim against Edwards. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818

F.3d 193, 199 (5th Cir. 2016).  A party does not carry that burden merely by making conclusory statements that the claims fail under state law.

The Court should also not be persuaded by the argument that the appraisal set the amount of loss thereby rendering all claims against Edwards irrelevant.  Although "[a]n appraisal award serves to estop one party from challenging the value of damages in a lawsuit on an insurance contract," issues of liability remain for resolution in judicial proceedings.  *See United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 595 (S.D. Tex.), *aff'd*, 624 F. App'x 225 (5th Cir. 2015).  Allied has not carried its burden to show that the appraisal award in this case forecloses recovery against Edwards.  It merely relies on precedent addressing damages without considering whether Edwards may be held liable for such damages through the claims Plaintiff asserts against him.

Because Allied has not carried its burden to show that each of Plaintiff's claims against Edwards lack merit, the ultimate ruling on the motion to remand depends on whether the limitations defense warrants finding that Plaintiff improperly joined Edwards.  Allied provides facts from outside the pleadings to support that defense and to show that Edwards had no involvement with the insurance claim after 2014.

Allied submits that Plaintiff's claims against Edwards are subject to a two year statute of limitations.  Plaintiff asserts no disagreement that two years is the applicable period of limitations but asserts that it filed this action within two years of the claims accruing.  *See* Pl.'s Mot. Remand at 13-15.  Characterizing its claim under Section 541.060(a) of the Texas Insurance Code as a tort claim, it contends that such claim did not accrue until it suffered actual damages on April 10, 2017, when Allied refused to fully pay the appraisal award.  *Id.*

10

The law supports applicability of a two year period of limitations. The Texas Insurance Code provides for a private cause of action for persons who sustain actual damages caused by another person who had engaged in certain unfair or deceptive acts or practices. *See* Tex. Ins. Code § 541.151 (effective Apr. 1, 2005). It also establishes a two year limitations period for claims under Chapter 541. *See id.* § 541.162(a). Subject to an 180-day extension set out in subparagraph (b), which is inapplicable on the facts of this case, a party bringing suit under Chapter 541 must do so before the second anniversary of the following:

> (1) the date the unfair method of competition or unfair or deceptive act or practice occurred; or

> (2) the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred.

*See id.*; *accord Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 437 (S.D. Tex. 2016). Even though Plaintiff's Section 541.060(a) may sound in tort, *see USAA Tex. Lloyds Co. v. Menchaca*, No. 14-0721, 2017 WL 1311752, at *4 (Tex. Apr. 7, 2017), *reh'g granted* (Dec. 15, 2017), Section 541.162(a) governs limitations issues, and it has long been held that under Texas law, claimed violations of the insurance code accrue "on the date the insurer denies coverage," *Pena v. State Farm Lloyds*, 980 S.W.2d 949, 954 (Tex. App. – Corpus Christi 1998, no pet.); *Fusaro v. Trinity Univ. Ins. Co.*, 466 S.W.3d 927, 932 n.3 (Tex. App. – Dallas 2015, reh'g overruled). Characterizing a Chapter 541 claim as a tort does not change the accrual date. Furthermore, as recognized long ago:

> [A] cause of action sounding in tort accrues, in the absence of a statute to the contrary or fraudulent concealment, when the tort is committed. This rule obtains notwithstanding the fact that the damages, or their extent, are not ascertainable until a later date . . . . *A legal injury must be sustained, of course, before a cause of action arises*.

*Deloitte & Touche v. Weller*, 976 S.W.2d 212, 215 (Tex. App. – Amarillo 1998, pet. denied)

11

(quoting *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967)).

Similarly, the DTPA sets a two-year period of limitations for claims brought under Subchapter E, Deceptive Trade Practices and Consumer Protection, which encompasses § 17.41 through § 17.63. *See* Tex. Bus. & Comm. Code § 17.565 (effective Sept. 1, 1987). Like § 541.162, the DTPA runs the limitation period from the date of occurrence or date of discovery and includes the same 180-day extension. Claimed violations of the DTPA also accrue when the insurer denies coverage. *Pena*, 980 S.W.2d at 954.

Allied submits an affidavit which shows that Edwards closed Plaintiff's claim in October 2014 and had no further involvement with the claim. Decl. Marcum ¶ 4. In addition, Allied no longer employed Edwards as of October 19, 2015; Plaintiff's insurance claim was reopened in July 2016 when Plaintiff's adjuster requested a reinspection of the property; and Plaintiff's adjuster sent a demand for appraisal on September 6, 2016. *Id.* ¶¶ 5-6. Plaintiff makes no attempt to contest these facts.

"As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Relying on that general rule, Allied argues that the Plaintiff's claims against Edwards accrued in 2014 and are untimely. *See* Def.'s Resp. at 9. However, in some circumstances, the date of accrual may be "a question of fact to be determined on a case-by-case basis." 128 S.W.3d at 222. One such circumstance is when there has been no outright denial of a claim. *See id.* A fact issue exists only when "there is ambiguity surrounding the insurer's actions." *Morales v. Lloyd's*, No. 7:14-CV-1001, 2016 WL 7734651, at *3 (S.D. Tex. Mar. 30, 2016). No fact issue exists when "there is an unambiguous event by the insurance company

12

indicating no further action will be taken on the claim, such as a writing conveying the final determination with respect to the damage or the closing of a claim file." *Id.*

Allied does not address this potential exception to the general rule. Nevertheless, the uncontested facts of this case show that Allied denied Plaintiff's claim approximately two months after its June 2014 submission and that Edwards closed Plaintiff's claim in October 2014. The uncontested facts also show that Edwards had no involvement with Plaintiff's claim after he closed it. From these facts, it may appear that Plaintiff's claims against Edwards are untimely and that it therefore has no possibility of recovery against him.

However, the uncontested facts also show that Plaintiff's claim was reopened in 2016 after Edwards ended his involvement with the case. Although reopening a claim generally does not change the accrual date for purposes of limitations, some circumstances may restart a statute of limitations. *See De Jongh v. State Farm Lloyds*, 664 F. App'x 405, 409 & n.2 (5th Cir. 2016) (per curiam). One circumstance is when the insured makes a timely claim for additional payments for a continuing problem. *Pena*, 980 S.W.2d at 953. Reopening a claim following a request for appraisal pursuant to the insurance policy appears to be a similar such circumstance. A limitations period may start anew when there has been a claim for additional damages or a withdrawing or changing of the decision to deny benefits. *Pace v. Travelers Lloyds of Tex. Ins. Co.*, 162 S.W.3d 632, 635 (Tex. App. – Houston [14th Dist.] 2005, no pet.). When an insurance company changes its position on the claim, the limitations period may be "tolled or extended." *See Morales*, 2016 WL 7734651, at *4. The facts of this case show that Allied made an additional payment following the request for appraisal and the reopening of the claim. Consequently, the facts show that there has been a change of the decision to deny benefits.

At the very least, this change of decision appears to affect the limitations period as it applies to Allied. While it may be uncertain how the reopening and additional payment affects the limitations period as to Edwards, that uncertainty cuts against removal. Allied does not address this uncertainty. On the facts before it, the Court should find a reasonable possibility of recovery against Edwards notwithstanding the two-year statute of limitations. Allied has not carried its burden to show that every claim against Edwards lacks merit or that its limitations defense eliminates all reasonable possibilities of recovery against him.

In addition, to find that Plaintiff improperly joined Edwards based on a limitations defense, the Court must also find that, on the facts of this case, the defense is not dispositive of all claims against all defendants. *See Rainwater v. Lamar Life Ins. Co.*, 391 F.3d 636, 638-39 (5th Cir. 2004) (per curiam). Allied does not address whether any claim asserted against it is timely. It does not identify the applicable statute of limitations for the claims asserted solely against it. Nor does it provide evidence that a contractual based limitations period applies to the Section 542 claim against it. When the party with the burden of proof fails to provide evidence of contractual based limitation, some courts apply "the four year statute of limitation for contract claims" to an asserted Section 542 claim. *See Morales*, 2016 WL 7734651, at *6. Notably, "there is some disagreement over whether the statute of limitations period for prompt payment claims [under Section 542] is two or four years." *See Hendrix v. Hartford Life Ins. Co.*, No. 3:12-CV-2643-M, 2013 WL 979285, at *2 (N.D. Tex. Mar. 13, 2013) (comparing *Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 3:05-CV-0816-K, 2006 WL 770424, at *2 (N.D. Tex. Mar. 27, 2006) (two-year limitations period), with *Rx.com, Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 563-64 (S.D. Tex. 2006) (four-year limitations period). The Court need not resolve this dispute at this juncture because, in the current context,

14

Allied has the burden to show that a claim against it is timely. The absence of evidence simply creates uncertainty and ambiguity as to the limitations period that is construed in favor of remand and against removal. Moreover, although the changed decision regarding the denial of benefits may affect the timeliness of the claims against Allied, it remains Allied's burden to show that it properly removed this cas on the basis of improper joinder and that burden includes showing that a relied-upon defense does not dispose of all claims against all defendants.

In this case, Allied simply leaves too many doubts and too much ambiguity to definitively find that it has carried its burden. When there are doubts as to the propriety of removal, the courts resolve those doubts in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). Courts also construe ambiguity against removal and in favor of remand. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013). This case provides sufficient doubts and ambiguity as to whether Plaintiff improperly joined Edwards. Given the circumstances of this case, the Court should find that Allied has not carried its burden to show the existence of federal jurisdiction and that it properly removed the case from state court. Although the claims against Edwards may ultimately be found untimely, Allied has simply not carried its burden at this juncture. Accordingly, the Court should grant the motion to remand.

## III.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court **FIND** that Defendant Allied Property and Casualty Insurance Company has not carried its burden to show the existence of federal jurisdiction and that it properly removed the case from state court. Consequently, the Court should **GRANT** Plaintiff's Motion to Remand (doc. 4) and **REMAND** this case to the 42nd District Court of Taylor County, Texas. Because the parties have not consented to proceed before

15

a United States Magistrate Judge, the undersigned directs the Clerk of Court to **REASSIGN** this case to Senior District Judge Sam R. Cummings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this 9 day of January, 2018.**

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**